William R. Meyer, #8-6961
Polsinelli PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
wmeyer@polsinelli.com
Telephone: (303) 572-9300
Fax: (303) 572-7883
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **Ivinson Memorial Hospital**,<br><br>Plaintiff,<br><br>v.<br><br>**United Healthcare Services, Inc.** and **Optum Insight, Inc.**,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES**<br><br>**Docket No.________** |

Plaintiff Ivinson Memorial Hospital ("Plaintiff" or "Ivinson") through its undersigned counsel respectfully requests this Court enter judgment against Defendants United Healthcare Services, Inc. ("UHC") and Optum Insight, Inc. ("Optum") and grant the relief requested below.

## NATURE OF THE ACTION

1. This action arises from UHC's effort, through Optum's Short Stay Billing Validation ("SSBV") program, to recoup payments UHC previously made to Ivinson for inpatient hospital services furnished to UHC Medicare Advantage enrollees.

2. Ivinson furnished the services, submitted inpatient claims to UHC, and UHC adjudicated and paid those claims. Only afterward did Optum conduct retrospective SSBV

reviews on UHC's behalf, whereby it determined that the same services should not have been paid at the inpatient level.

3. UHC and Optum thereafter treated the prior payments as overpayments and sought to recover them from Ivinson. Ivinson challenged the SSBV determinations through the reconsideration process Defendants made available, but Defendants upheld the adverse determinations and have not transmitted the disputes to the Part C Independent Review Entity.

4. If those post-payment decisions constitute reopenings and revised adverse organization determinations under 42 C.F.R. Part 422, UHC must complete the administrative process Congress and CMS prescribed, including independent review.

5. Defendants instead characterize the SSBV decisions as mere provider-payment-accuracy determinations outside the organization-determination process. If that characterization is correct, then the Part C administrative-review process does not apply to Ivinson's provider-payment dispute and there is no Part C administrative remedy for Ivinson to exhaust.

6. Ivinson therefore seeks, in Count I, a declaration that the challenged decisions are revised adverse organization determinations and further relief requiring UHC to transmit them to the IRE. In the alternative, if the Court determines that the decisions fall outside Part 422, Ivinson seeks damages on its implied-in-fact contract claim in Count II.

## PARTIES

7. Plaintiff Ivinson Memorial Hospital is a Wyoming nonprofit corporation. Plaintiff operates its Hospital in Laramie, Wyoming and is a Medicare-participating hospital.

8. Plaintiff did not have a network or provider contract with UHC governing the claims at issue.

9. Defendant United Healthcare Services, Inc. is a Minnesota corporation and operates a Medicare Advantage Organization ("MAO") contracted with the Centers for Medicare and Medicaid Services ("CMS"), which maintains its principal place of business in Eden Prairie, Minnesota.

10. Defendant Optum Insight, Inc. is a Minnesota corporation which maintains its principal place of business in Eden Prairie, MN, and agent of UHC, to whom UHC delegated the responsibility to conduct post-payment review audits and process appeals accordingly.

11. Although Optum performed delegated functions for UHC, UHC remains the MAO responsible for compliance with its obligations to CMS. *See* 42 C.F.R. § 422.504(i)(1).

## JURISDICTION AND VENUE

12. The Court has original jurisdiction under 28 U.S.C. § 1332 because complete diversity exists and the amount in dispute exceeds $75,000.

13. Venue is proper in the United States District Court for the District of Wyoming because Ivinson furnished the underlying hospital services in Wyoming, suffered

the challenged recoupments there, and a substantial part of the events giving rise to the dispute occurred there.

14. The Court also has original jurisdiction under 28 U.S.C. § 1331 because Count I arises under federal law, including Medicare Part C, 42 U.S.C. §§ 1395w-21 through 1395w-29, and its implementing regulations, 42 C.F.R. Part 422, Subpart M. Count I presents a federal question concerning the legal character of UHC's post-payment determinations under 42 C.F.R. §§ 422.566 and 422.616 and UHC's resulting obligations under §§ 422.590 and 422.592.

## REGULATORY FRAMEWORK

15. MAOs are subject to the administrative-review requirements of 42 C.F.R. Part 422, Subpart M. The process begins with an "organization determination" by the MAO concerning payment for or provision of Medicare-covered services.

16. An organization determination includes an MAO's refusal, whether made before or after services are furnished, to pay for services "in whole or in part," including a dispute concerning the "type or level of services" for which payment is due. 42 C.F.R. § 422.566(b)(3). The regulation therefore expressly encompasses post-service payment decisions concerning whether services were payable at a particular level of care.

17. Part 422 also expressly permits an MAO to reopen and revise a prior organization determination. 42 C.F.R. § 422.616(a). Once a revised determination is issued, "any party may file an appeal." Id. § 422.616(d). Those provisions govern the administrative consequences when, as alleged here, an MAO first pays a claim and later revisits that payment through a post-payment review.

18. Providers may participate as parties in that process. Among other circumstances, a provider that furnished the services and formally waived recourse against the enrollee is an assignee and party to the organization determination, and a provider with an "appealable interest" may likewise qualify as a party. 42 C.F.R. § 422.574(b), (d).

19. If, on reconsideration of a payment determination, the MAO affirms its adverse organization determination in whole or in part, the MAO must prepare a written explanation and send the case file to the independent entity contracted by CMS—the Independent Review Entity ("IRE")—within 60 days of receiving the reconsideration request. 42 C.F.R. § 422.590(b)(2). If the MAO fails to act within the applicable reconsideration period, that failure itself constitutes an affirmance and the MAO must transmit the file to the IRE. Id. § 422.590(d).

20. IRE review is not discretionary once an adverse determination reaches that stage. When the MAO affirms an adverse organization determination, "the issues that remain in dispute must be reviewed and resolved" by the independent entity. 42 C.F.R. § 422.592(a).

21. An MAO cannot avoid these obligations by delegating claims-review or reconsideration functions to another entity. Regardless of its relationships with first-tier, downstream, or related entities, the MAO "maintains ultimate responsibility" for compliance with its CMS contract, and delegated activities must remain consistent with the MAO's Medicare obligations. 42 C.F.R. § 422.504(i)(1), (3)–(4). Thus, UHC remains responsible for compliance with Part 422 notwithstanding its delegation of the SSBV review process to Optum.

## FACTUAL BACKGROUND

22. Ivinson provides inpatient hospital services to patients enrolled in Medicare Advantage plans issued and administered by UHC.

23. Ivinson is not a contracted or in-network provider with UHC for the claims at issue in this action.

24. Between approximately April 2024 and October 2025, Ivinson furnished inpatient hospital services to numerous UHC Medicare Advantage enrollees (the "Patients").

25. Ivinson's records reflect a UHC prior authorization number associated with each of the inpatient admissions presently at issue.

26. After furnishing those services, Ivinson submitted claims to UHC seeking payment for the inpatient services provided to the Patients (collectively, the "Claims").

27. UHC did not initially deny the Claims or determine that the services should have been billed at an outpatient or observation level. UHC adjudicated the Claims as submitted and paid Ivinson for the inpatient hospital services.

28. Only after the services had been furnished, the Patients had been discharged, and UHC had paid the Claims did UHC, through Optum, seek to revisit those payment determinations.

29. UHC and Optum then demanded repayment and began recouping those previously paid amounts.

30. Acting on behalf of UHC, Optum subjected the previously paid Claims to retrospective Short Stay Billing Validation ("SSBV") reviews.

31. The SSBV reviews occurred after payment. The reviews improperly applied medical necessity determinations and evaluated whether the Patients' hospitalizations properly supported payment at the inpatient level.

32. Following those reviews, Optum determined that the Claims had been improperly paid as inpatient claims and asserted that Ivinson should instead have billed the services at the outpatient or observation level.

33. Optum therefore treated the difference between UHC's original inpatient payments and the amounts Optum concluded should have been paid as overpayments subject to repayment or recoupment.

34. Although Defendants characterize the SSBV process as a "payment accuracy" review rather than a medical-necessity or coverage determination, the substance of the SSBV determinations concerned the clinical circumstances of the Patients' hospitalizations and whether those circumstances supported inpatient-level care.

35. In making the challenged determinations, Optum's review process considered the Patients' medical conditions and clinical records and included review by physician medical directors applying clinical criteria, including InterQual criteria, in determining whether the Claims supported inpatient billing.

36. The retrospective SSBV determinations were inconsistent with how UHC and Optum had treated the same admissions before the Claims were subjected to post-payment review.

37. Ivinson timely disputed Optum's SSBV findings and pursued the reconsideration process Defendants made available for those findings.

38. Optum submitted Ivinson's challenges for further review, including review by physician medical directors.

39. Optum thereafter upheld the challenged SSBV determinations and advised Ivinson that its rights to further reconsideration through that process had been exhausted.

40. The result of that process was therefore a final adverse decision by UHC's delegate that the previously paid inpatient Claims had been overpaid and were subject to recovery.

41. Defendants have not transmitted the Claims or the adverse reconsideration determinations to the IRE.

42. Instead, Defendants maintain that the SSBV determinations are merely post-payment "claim payment accuracy" determinations that do not constitute coverage or organization determinations and therefore will not be forwarded to an IRE.

43. Defendants' position leaves Ivinson in the precise procedural dilemma presented by this action. If Optum's decisions revised UHC's original payment determinations and constitute adverse organization determinations, UHC has stopped the Part C administrative process before the independent-review stage required by federal law.

44. If, on the other hand, Defendants are correct that the SSBV decisions are purely provider-payment determinations that fall outside the organization-determination process, then there is no Part C administrative process through which Ivinson can obtain review of the merits of those determinations.

45. In either event, Defendants cannot simultaneously treat the Claims as outside the organization-determination process for purposes of denying IRE review while invoking that same administrative process as a barrier to Ivinson's alternative judicial remedy.

## COUNT I — DECLARATORY JUDGMENT AND FURTHER EQUITABLE RELIEF

46. Ivinson repeats and realleges all other paragraphs as though fully set forth herein.

47. Under 42 C.F.R. §§ 422.590(b)(2) and 422.592, an MAO that affirms an adverse payment organization determination on reconsideration **must** transmit the case to the CMS-contracted Independent Review Entity for further review.

48. An actual and substantial controversy exists concerning the legal character of Defendants' post-payment SSBV determinations and UHC's resulting obligations under 42 C.F.R. Part 422.

49. Those post-payment decisions reopened and revised UHC's original payment determinations and resulted in adverse organization determinations within the meaning of 42 C.F.R. §§ 422.566 and 422.616.

50. Ivinson timely challenged the SSBV determinations through the reconsideration process that Defendants provided. Optum upheld the challenged determinations and advised Ivinson that its rights to further reconsideration through that process had been exhausted.

51. Under 42 C.F.R. §§ 422.590(b)(2) and 422.592, an MAO that affirms an adverse payment organization determination on reconsideration must transmit the case to the CMS-contracted Independent Review Entity for further review.

52. UHC has not transmitted the Claims to the IRE. Instead, Defendants contend that SSBV determinations are merely post-payment “claim payment accuracy” determinations, are not organization determinations, and therefore are not subject to IRE review.

53. Defendants' position has brought the administrative process to a complete halt. Optum has issued and affirmed the determinations that permit Defendants to recoup UHC's prior payments, while simultaneously taking the position that the determinations fall outside the administrative process through which Ivinson could obtain independent review of them.

54. Ivinson therefore has no administrative tribunal before which it can obtain review of Defendants' refusal to treat the challenged determinations as organization determinations. The IRE cannot review the Claims unless UHC transmits them, and UHC refuses to transmit them because Defendants contend that the Claims are not eligible for IRE review in the first place.

55. This is not merely a complaint that the available administrative process is inconvenient, delayed, or unlikely to afford Ivinson the relief it seeks. Under Defendants' interpretation, there is no administrative process available at all through which Ivinson can obtain a determination of whether the challenged SSBV decisions are subject to the Part 422 review process.

56. The Tenth Circuit has held that Medicare's channeling requirement does not bar federal-question jurisdiction where its application would not merely postpone or channel judicial review through an administrative process, but instead would result in “no review at all.” *Bartlett Memorial Medical Center, Inc. v. Thompson*, 347 F.3d 828, 843–44 (10th Cir. 2003) (applying *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000)).

57. Ivinson does not ask this Court in Count I to determine whether the individual inpatient Claims were medically necessary, whether the SSBV determinations were correct on their merits, or the amount ultimately payable on any Claim.

58. Instead, Ivinson seeks a determination of the antecedent procedural question whether Defendants' position has prevented any administrative review of UHC's post-payment revision and affirmance of the Claims.

59. The Court has authority under 28 U.S.C. §§ 1331 and 2201 to resolve that controversy and declare the parties' respective rights and obligations under federal law. Section 2202 further authorizes necessary or proper relief based upon that declaratory judgment. See *Gant v. Grand Lodge of Texas*, 12 F.3d 998, 1003 (10th Cir. 1993).

60. Ivinson requests that the Court exercise its authority to declare that:

a) The post-payment/revised adverse determinations are adverse organization determinations within the meaning of §§ 422.566 and 422.616.

b) UHC's affirmance of the adverse determinations, whether directly or through Optum as its delegate, triggered the mandatory IRE referral requirements of §§ 422.590(b)(2) and 422.592.

c) UHC remains responsible for compliance with those requirements notwithstanding its delegation of claims review and reconsideration functions to Optum.

d) Defendants' refusal to process the adverse reconsiderations in accordance with those requirements improperly prevents Ivinson from obtaining the administrative review prescribed by federal law.

61. Pursuant to 28 U.S.C. § 2202, Ivinson further requests such necessary and proper relief as will effectuate that declaration, including an order requiring UHC to cause the complete case files for the Claims to be transmitted to the CMS-contracted IRE within a period specified by the Court.

**COUNT II — BREACH OF IMPLIED-IN-FACT CONTRACT**

62. Ivinson repeats and realleges all other paragraphs as though fully set forth herein.

63. Ivinson and UHC did not have an express written provider agreement governing the Claims. Their relationship concerning the Claims instead arose from their communications, conduct, and course of performance.

64. Wyoming recognizes an implied-in-fact agreement when the parties' outward conduct demonstrates “a mutual manifestation of an intent to enter into an agreement.” *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, 75 P.3d 640, 650 (Wyo. 2003). Contract formation turns on the parties’ objective manifestations of assent, rather than their unexpressed subjective intentions. *Id.*

65. The terms of an agreement need not be stated in a formal writing or spelled out in minute detail. Wyoming law permits contractual terms to be established and “fleshed

out" through the parties' prior course of dealing and subsequent course of performance. *Fuger v. Wagoner*, 2020 WY 154, ¶ 10, 478 P.3d 176, 181 (Wyo. 2020).

66. Here, the parties' objective conduct manifested an agreement concerning payment for hospital services Ivinson furnished to UHC's Medicare Advantage members. For the Claims at issue, Ivinson's records reflect UHC-issued authorization numbers associated with the inpatient admissions. Ivinson thereafter furnished the hospital services, submitted the Claims to UHC as inpatient claims, and sought payment from UHC rather than from its members.

67. UHC, in turn, accepted Ivinson's performance, adjudicated the Claims as submitted, and paid Ivinson for the inpatient hospital services. It did so repeatedly across the Claims at issue rather than through an isolated or inadvertent transaction.

68. From these objective manifestations and the parties' course of performance, a reasonable provider in Ivinson's position would understand that, when Ivinson furnished covered inpatient hospital services to UHC members in accordance with the parties' established procedures and submitted corresponding Claims, UHC would pay Ivinson the applicable amount for those inpatient services.

69. Ivinson fully performed its obligations with respect to the Claims. It obtained prior authorization, furnished the hospital services, discharged the Patients, submitted the Claims to UHC, and accepted UHC's adjudication and payment of those Claims.

70. UHC subsequently breached the parties' implied-in-fact agreement. After accepting Ivinson's performance, adjudicating the Claims, and paying them at the inpatient level, UHC—acting through Optum—retroactively recharacterized the same Claims as

payable only at an outpatient or observation level and demanded repayment of the amounts previously paid.

71. The circumstances supporting Ivinson's alternative contract claim closely parallel those considered in *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340 (5th Cir. 2024). There, as here, a healthcare provider furnished services to United's Medicare Advantage members without a written provider contract. United later audited the previously paid claims, asserted that they had been overpaid, and recouped the asserted overpayments through offsets. The provider challenged the recoupments through United's internal appeal process and then asserted, among other state-law claims, breach of implied contract. *Id.* at 344–45.

72. The Fifth Circuit held that the Medicare Advantage administrative process did not bar those state-law claims. Because the services had already been furnished, no enrollee had been denied any service, and the enrollees had no financial stake in whether United could recoup its prior payments from the provider, the dispute was solely a retrospective payment dispute between United and the provider. The court therefore held that there were not merely unexhausted administrative remedies—there were "no administrative remedies for [the provider] to exhaust." *Id.* at 350–51.

73. Thus, if the Court determines that the SSBV determinations are, as Defendants contend, merely provider-payment determinations outside the Part 422 organization-determination process, there is no Part C administrative remedy that Ivinson must exhaust before pursuing its state-law contract claim. See *Caris*, 108 F.4th at 350–51.

74. Defendants cannot have it both ways. If the challenged determinations are organization determinations, UHC must afford Ivinson the IRE review sought in Count I. If they are instead private provider-payment determinations outside that process, as Defendants contend, then *Caris* confirms that the absence of further Medicare administrative review does not foreclose Ivinson's alternative state-law remedy.

75. As a direct and foreseeable result of UHC's breach, Ivinson has suffered damages consisting of amounts UHC has recouped, withheld, or offset from payments otherwise due to Ivinson, less any amounts subsequently paid by UHC on rebilled Claims, in an amount to be proven at trial and currently totaling at least $526,757.48.

## PRAYER FOR RELIEF

WHEREFORE, Ivinson Memorial Hospital respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

1. Declare that the identified post-payment/reopening determinations are adverse organization determinations.

2. Declare that the adverse reconsiderations must be transmitted to the IRE.

3. Order UHC, including through its delegate Optum, to transmit the complete appeal files within a specified period; and

4. Require confirmation of transmission and retain jurisdiction to ensure compliance.

5. Alternatively, if the Court determines that the recoupments are not organization determinations subject to Part C review, Plaintiff respectfully requests the Court enter judgment for Ivinson on its implied-contract claim in the amount proved;

6. Award prejudgment and post-judgment interest;

7. Award taxable costs and other relief permitted by law; and

8. Grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

**POLSINELLI PC**

By: */s/William R. Meyer*

Dated this 25th day of September, 2026.